<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ERIC E. CRISS, | : | |
| | : | Civil Action No. 08-5168 (JAP) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STATE OF NEW JERSEY, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Eric E. Criss
Somerset County Jail
40 Grove Street
P.O. Box 3000
Somerville, NJ 08876

**PISANO**, District Judge

Plaintiff Eric E. Criss, a prisoner confined at Somerset County Jail in Somerville, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Amended Complaint.

At this time, the Court must review the Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that Defendant Detective Sergeant Craig Meyer was assigned to investigate an allegation that fraudulent payroll checks, drawn on the account of Custom Alloy Corporation, were cashed at five separate branches of the Peapack Gladstone Bank.

Plaintiff alleges, further:

The investigation revealed that on 07/02/07 at 10:33 hrs, Eric E. Criss cashed custom alloy corporation counterfeit payroll check # 00092027 in the amount of $2,183.75 in the Far Hills branch of the Peapack Gladestone [*sic.*] Bank.

He presented himself as James M. Wilmott, he presented a fake [P]ennsylania driver license to the bank employee as identification.

(Amended Complaint at 2.)[1]  Plaintiff alleges that, as a result of the investigation, Defendant Meyer signed an affidavit to

---

[1]  In addition, Plaintiff attaches to the initial Complaint pages of grand jury testimony that police had obtained a bank surveillance photograph of Plaintiff cashing this check.

2

obtain an arrest warrant, pursuant to which Plaintiff was arrested on February 24, 2008.

Plaintiff alleges that on Monday, February 25, 2008, he appeared in the Superior Court of New Jersey, Somerset County, in the courtroom of the Honorable Julie M. Marino, where he was charged by complaint no. W-2008-000072-1801, and where bail was set at $50,000.00, cash only. Plaintiff alleges that the bail was excessive.

Plaintiff alleges that he was again brought before Judge Marino on May 9, 2008, and charged by complaint with "new" charges. He alleges that he was deprived of his Sixth Amendment right to counsel at this hearing, because although he was assigned counsel he was not represented by counsel at this proceeding. Also, at this time, his bail was raised to $70,000, cash only, which he alleges was a violation of his right to be free from excessive bail.

Plaintiff alleges that upon further investigation, the complaint no. W-2008-000072-1801 was administratively dismissed on May 23, 2008. Attachments to the initial Complaint, here, reflect that the Somerset County criminal complaint was dismissed as "duplicitous." Plaintiff alleges that five days later, on May 28, 2008, Defendant Detective Sergeant John W. Fodor perjured himself in a grand jury proceeding when he testified that it was Plaintiff who entered the Peapack Gladstone Bank on July 2, 2007,

3

and presented himself as James M. Wilmott, the person who cashed the counterfeit check, when Defendant Fodor knew that the matter had been dismissed.  Plaintiff alleges that Assistant Prosecutor Matthew Murphy of the Somerset County Prosecutor's Office violated his rights when he allowed false testimony by Defendant Fodor in this grand jury proceeding.  Plaintiff also alleges that Assistant Prosecutor Matthew Murphy and Detective Sergeant John Fodor are in violation of 18 U.S.C. §§ 241 and 242.

Plaintiff alleges that he was deprived of property without due process when the defendants proceeded to forfeit his personal property, including his 2001 Jeep Grand Cherokee and his 2006 motorcycle.

Finally, Plaintiff alleges that the Somerset County Prosecutor Wayne J. Forrest is liable for his failure to properly train and supervise his subordinates.

Plaintiff names as defendants: the State of New Jersey, Somerset County, Bedminster Township, the New Jersey State Attorney General, the Bedminster Police Department, the Somerset County Prosecutors Office, Detective Sergeant Craig Meyer, and Detective Sergeant John W. Fodor.  Plaintiff seeks monetary damages.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are

4

frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a

5

> legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).  See also Morse v. Lower Merion School Dist., 132 F.3d at 906 (a court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions").

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

In addition, a complaint must comply with the Federal Rules of Civil Procedure.  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 10(b) provides:

6

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ...  If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

Rule 20(a)(2) controls the permissive joinder of defendants in

pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants
> if:
>         (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; <u>and</u>
>         (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added).  <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252

Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th

Cir. 2007).

## III.   <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

     Local government units and supervisors are not liable under § 1983 solely on a theory of <u>respondeat superior</u>.  <u>See City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of <u>respondeat superior</u>. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  <u>Accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

8

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so

> obvious, and the inadequacy of existing practice so
> likely to result in the violation of constitutional
> rights, that the policymaker can reasonably be said to
> have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Here, Plaintiff has named as defendants the municipalities of Somerset County and Bedminster Township as well as municipal offices of the Bedminster Police Department and the Somerset County Prosecutor's Office.  However, Plaintiff has alleged no facts suggesting that any municipal policy was the driving force behind his alleged injuries.  Accordingly, the claims against these municipalities will be dismissed without prejudice.

IV.   ANALYSIS

A.   Claims against the State of New Jersey

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in

10

federal court regardless of the type of relief sought.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

Title 28 Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) require this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).

For the foregoing reasons, all damages claims against the State of New Jersey and the New Jersey State Attorney General must be dismissed with prejudice.[2]

---

[2] In addition, Plaintiff alleges no facts that would suggest that the Attorney General was in any way involved in the events that form the substance of Plaintiff's action.  For this reason, also, all claims against the Attorney General are subject to dismissal with prejudice.

B.   <u>False Arrest Claim</u>

The Fourth Amendment to the federal Constitution provides:

> The right of the people to be secure in their persons,
> houses, papers, and effects, against unreasonable
> searches and seizures, shall not be violated, and no
> Warrants shall issue, but upon probable cause,
> supported by Oath or affirmation, and particularly
> describing the place to be searched, and the persons or
> things to be seized.

U.S. Const. amend IV.

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983.  <u>See</u> <u>Walmsley v. Philadelphia</u>, 872 F.2d 546 (3d Cir. 1989)(citing cases); <u>see also</u>, <u>Albright v. Oliver</u>, 510 U.S. 266, 274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).  Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification."  <u>Ramirez v. United States</u>, 998 F. Supp. 425, 434 (D.N.J. 1998) (quoting <u>Fleming v. United Postal Service, Inc.</u>, 604 A.2d 657, 680 (N.J. Law Div. 1992)).

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements:  (1) that there was an arrest; and (2) that the arrest was made without probable cause.  <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988).  To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the

12

proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed." <u>Lind v. Schmid</u>, 67 N.J. 255, 262 (1975). "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111 (1975) (<u>quoting</u> <u>Beck v. State of Ohio</u>, 379 U.S. 89, 91 (1964)); <u>Sharrar v. Felsing</u>, 128 F.3d 810, 817 (3d Cir. 1997).

Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." <u>Groman v. Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995); <u>Palma v. Atlantic County</u>, 53 F. Supp. 2d 743, 755 (D.N.J. 1999)(citing <u>Groman</u>). Indeed, the U.S. Supreme Court recently noted that, "False arrest and false imprisonment overlap; the former is a species of the latter." <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007). Any such false imprisonment ends as soon as the arrestee is detained pursuant to legal process. <u>Id.</u> at 389.

13

Here, Plaintiff does not allege facts sufficient to state a claim for false arrest on February 24, 2008, or for false imprisonment prior to his appearance in court on February 25, 2008.  To the contrary, he alleges that the officer who provided evidence in support of the issuance of the arrest warrant had conducted an investigation of an alleged fraudulent check cashing scheme and had obtained evidence regarding the specific fraudulent check alleged to have been cashed by Plaintiff, including a bank surveillance photograph check.

The facts alleged by Plaintiff as preceding his arrest are sufficient to establish probable cause for arrest.  Plaintiff has failed to state a claim for false arrest or false imprisonment.[3]

C.    Claims Arising out of Grand Jury Proceedings

Plaintiff alleges that Defendant John W. Fodor falsely testified at a grand jury proceeding that an investigation revealed that Plaintiff was involved in a fraudulent check-cashing scheme, because a criminal complaint against him had already been dismissed.  Plaintiff further alleges that Defendant Assistant Prosecutor Matthew Murphy permitted this false testimony.

Witnesses, including police witnesses, are absolutely immune from civil damages based upon their testimony.  See Briscoe v.

---

[3] This Court, of course, expresses no opinion as to whether there is evidence sufficient to sustain a conviction.

LaHue, 460 U.S. 325, 341-46 (1983).  Accordingly, Defendant Fodor is immune from any action for damages based upon his grand jury testimony.

In addition, "a state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983.  Imbler v. Pachtman, 424 U.S. 409, 410 (1976).  Thus, a prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity.  Burns v. Reed, 500 U.S. 478, 492 (1991).  Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  The acts complained of here are acts undertaken in the presentation of evidence to a grand jury, clearly within the scope of Defendant Murphy's duties in initiating and pursuing a criminal prosecution; thus, he is immune from any liability for damages as a result of those actions.

Moreover, the facts alleged do not demonstrate any "perjury" based upon the dismissal of the earlier criminal complaint, as Plaintiff's attachments to the initial Complaint here reflect

15

that the earlier criminal complaint had been administratively dismissed merely because it was duplicative.

To the extent the Amended Complaint could be construed as asserting a claim for malicious prosecution, that claim also must be dismissed without prejudice for failure to state a claim.

In order to state a <u>prima facie</u> case for a § 1983 claim of malicious prosecution pursuant to the Fourth Amendment, a plaintiff must establish the elements of the common law tort as it has developed over time, <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 579 (3d Cir. 1996), and that there has been a seizure, <u>Gallo v. City of Philadelphia</u>, 161 F.3d 217, 222 (3d Cir. 1998); <u>Luthe v. Cape May</u>, 49 F. Supp. 2d 380, 393 (D.N.J. 1999).  Under New Jersey law, the common law tort elements of a malicious prosecution action arising out of a criminal prosecution are:  (1) the criminal action was instituted by the defendant against the plaintiff, (2) it was actuated by malice, (3) there was an absence of probable cause for the proceeding, and (4) the criminal proceeding was terminated favorably to the plaintiff. <u>Lind v. Schmid</u>, 67 N.J. 255, 262 (1975).  A plaintiff attempting to state a malicious prosecution claim must also allege that there was "'some deprivation of liberty consistent with the concept of seizure.'"  <u>Gallo</u>, 161 F.3d at 222 (quoting <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 116 (2d Cir. 1995)); see <u>Albright v. Oliver</u>, 510 U.S. 266 (1994).  Ordinarily, the statute

16

of limitations on a malicious prosecution claim begins to run on the date plaintiff receives a favorable termination of the prior criminal proceeding.  <u>Heck v. Humphrey</u>, 512 U.S. 477, 489 (1994).

Here, Plaintiff has failed to allege a favorable termination of the criminal proceedings against him.  The administrative dismissal of the criminal complaint as duplicative is not a favorable termination, especially while other proceedings remain pending against him under other related criminal complaints or a grand jury indictment.  This claim will be dismissed without prejudice.

D.   <u>Claim for Failure to Train/Supervise</u>

Plaintiff alleges that Somerset County Prosecutor Wayne J. Forrest is liable to him for failure to properly train and supervise his "subordinates," presumably, Defendant Assistant Prosecutor Matthew Murphy.

Where a need for "more or different training ... is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train ... can fairly be said to represent official policy," <u>City of Canton</u>, 489 U.S. at 390, and that failure to train "actually causes injury," <u>Id.</u>  Here, however, Plaintiff fails to state a claim for a constitutional injury; thus, he fails to state a claim for failure to train.

17

In addition, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program.  ...  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training ... .  Moreover, for liability to attach ... the identified deficiency in a city's training program must be closely related to the ultimate injury.

Id. at 390-91.  Plaintiff alleges nothing more than that a particular individual caused him an injury, plainly an insufficient allegation upon which to base liability for failure to train.  Accordingly, Plaintiff's failure to train claim must be dismissed for failure to state a claim.

E.   Claims under 18 U.S.C. §§ 241, 242

Title 18 U.S.C. Sections 241 and 242 are criminal civil rights statutes.  Plaintiff alleges that Assistant Prosecutor Matthew Murphy and Detective Sergeant John Fodor violated these provisions.

Authorities are in agreement that the submission by a private party of a complaint under §§ 241 or 242 is not the appropriate manner in which to initiate criminal proceedings. See generally Peters v. Beard, 2006 WL 2174707 (M.D. Pa. June 13, 2006) (Report and Recommendation) (citations omitted), adopted by, 2006 WL 2175173 (M.D. Pa. Aug. 1, 2006).  See also Higgins v.

18

<u>Neal</u>, 52 F.3d 337, 1995 WL 216920 (10th Cir. 1995) (unpubl.) (collecting cases); <u>Caracter v. Avshalumov</u>, 2006 WL 3231465 (D.N.J. Nov. 8, 2006) (collecting cases); <u>Stoll v. Martin</u>, 2006 WL 2024387 (N.D. Fla. July 17, 2006) (collecting cases).

Nevertheless, if a purported criminal complaint warrants action, a Court may refer it to the United States Attorney for action.  <u>United States ex rel. Savage v. Arnold</u>, 403 F. Supp. 172, 174 (E.D. Pa. 1975).  The commencement of a criminal action is governed in part by Federal Rules of Criminal Procedure 3 and 4, which provide some guidance in determining whether a purported criminal complaint merits reference to the United States Attorney.  Rule 3 provides, "The complaint is a written statement of the essential facts constituting the offense charged.  It must be made under oath before a magistrate judge or, if none is reasonably available, before a state or local judicial officer."  Rule 4 provides, in pertinent part, "If the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it."

Here, Plaintiff's allegations are not sufficient to establish probable cause to believe that the defendants violated

§§ 241 or 242.[4]  This Court perceives no reason, on the basis of
the facts before it, to refer this matter to the United States
Attorney.

F.   Equal Protection Claims

     Plaintiff generally alleges jurisdiction under 42 U.S.C.
§§ 1985 and 1986.

     Section 1985 provides, in relevant part:

     (2) Obstructing justice; intimidating party, witness,
     or juror

     If two or more persons in any State or Territory
     conspire to deter, by force, intimidation, or threat,
     any party or witness in any court of the United States
     from attending such court, or from testifying to any
     matter pending therein, freely, fully, and truthfully,
     or to injure such party or witness in his person or
     property on account of his having so attended or
     testified, or to influence the verdict, presentment, or
     indictment of any grand or petit juror in any such
     court, or to injure such juror in his person or
     property on account of any verdict, presentment, or
     indictment lawfully assented to by him, or of his being
     or having been such juror; or if two or more persons
     conspire for the purpose of impeding, hindering,
     obstructing, or defeating, in any manner, the due
     course of justice in any State or Territory, with
     intent to deny to any citizen the equal protection of
     the laws, or to injure him or his property for lawfully
     enforcing, or attempting to enforce, the right of any
     person, or class of persons, to the equal protection of
     the laws;

     (3) Depriving persons of rights or privileges

     If two or more persons in any State or Territory
     conspire ... for the purpose of depriving, either

_____

     [4] The elements of a violation under § 242 are set forth in
United States v. Senak, 477 F.3d 304 (7th Cir.), cert. denied,
414 U.S. 856 (1973).

                              20

> directly or indirectly, any person or class of persons
> of the equal protection of the laws, or of equal
> privileges and immunities under the laws; ... the
> person so injured or deprived may have an action for
> the recovery of damages occasioned by such injury or
> deprivation, against any one or more of the
> conspirators.

42 U.S.C. § 1985(2), (3).

There are several distinct clauses in Section 1985(2), each creating a distinct cause of action. All of these causes of action require proof of conspiracy, discussed more fully below, which is notably absent here. In addition, as Plaintiff alleges no racial or class-based invidious discrimination, the Court does not construe the Amended Complaint as attempting to assert a conspiracy to deny Plaintiff's equal protection rights. To state a § 1985(2) deterrence claim, a plaintiff must allege (1) a conspiracy, (2) to deter testimony by force or intimidation, and (3) injury to the plaintiff. Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126 (10th Cir. 1994) (citing Rutledge v. Arizona Bd. of Regents, 859 F.2d 732, 735 (9th Cir. 1988)). It is not necessary that the witness actually be deterred from testifying. Brever, 40 F.3d at 1128-29. Plaintiff makes no allegation that the presentation of testimony to the grand jury was influenced by force or intimidation. Nor does Plaintiff allege any facts suggesting an effort to improperly influence the verdict of the grand jury. As previously noted, the administrative dismissal of the criminal complaint as duplicative in no way amounted to a

determination that the facts uncovered by the police investigation were false.  Plaintiff has failed to state a claim under § 1985(2).

To state a claim under § 1985(3), one must allege:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 829 (1983).  With respect to the second element, the conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).  Thus, in order to state a claim, there must be factual allegations suggesting some racial or otherwise invidiously discriminatory animus behind the alleged conspirators' actions.  See Kush v. Rutledge, 460 U.S. 719, 724-26 (1983).  No such allegations are set forth in the Complaint.[5]

In addition, Plaintiff fails to allege any facts sufficient to set forth a claim of conspiracy.  In 2007, the Supreme Court addressed the question of what a plaintiff must plead in order to

---

[5] To the contrary, in his challenge to the forfeiture proceedings, Plaintiff alleges that the Somerset County Prosecutor's Office has a history of prosecuting persons who own substantial assets.

22

state a conspiracy claim under § 1 of the Sherman Act.  See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-66 (2007).  The Court first reviewed historical pleading requirements.

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Twombly, 127 S. Ct. at 1964-65 (citations and footnote omitted). The Court then applied these general standards to the Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."  In identifying facts that are suggestive enough to render a § 1 conspiracy claim plausible, we have the benefit of the prior rulings and considered views of leading commentators, already quoted, that lawful parallel conduct fails to bespeak unlawful agreement.  It makes

sense to say, therefore, that an allegation of parallel
conduct and a bare assertion of conspiracy will not
suffice.  Without more, parallel conduct does not
suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

       The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory.  An allegation of parallel conduct
is thus much like a naked assertion of conspiracy in a
§ 1 complaint: it gets the complaint close to stating a
claim, but without some further factual enhancement it
stops short of the line between possibility and
plausibility of "entitle[ment] to relief."

Twombly, 127 S. Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to

the antitrust context").

       Context matters in notice pleading.  Fair notice under
Rule 8(a)(2) depends on the type of case -- some
complaints will require at least some factual

24

allegations to make out a "showing that the pleader is
entitled to relief, in order to give the defendant fair
notice of what the ... claim is and the grounds upon
which it rests."  Indeed, taking Twombly and the
Court's contemporaneous opinion in Erickson v. Pardus,
127 S.Ct. 2197 (2007), together, we understand the
Court to instruct that a situation may arise where, at
some point, the factual detail in a complaint is so
undeveloped that it does not provide a defendant the
type of notice of claim which is contemplated by
Rule 8.  Put another way, in light of Twombly, Rule
8(a)(2) requires a "showing" rather than a blanket
assertion of an entitlement to relief.  We caution that
without some factual allegation in the complaint, a
claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

Here, Plaintiff's conclusory allegation of jurisdiction
under §§ 1985 and 1986, without any factual explication, is
insufficient to suggest a conspiracy.  Construed liberally, the
facts alleged generally in the Amended Complaint amount to
nothing more than allegations of "parallel conduct," if that,
without any allegations of facts suggesting a preceding meeting
of the minds among the alleged conspirators.  For this reason,
also, the Complaint fails to state a claim under § 1985(2) or
(3).  This claim will be dismissed without prejudice.

Section 1986 provides, in pertinent part:

Every person who, having knowledge that any of the
wrongs conspired to be done, and mentioned in section
1985 of this title, are about to be committed, and
having power to prevent or aid in preventing the
commission of the same, neglects or refuses so to do,
if such wrongful act be committed, shall be liable to
the party injured, or his legal representatives, for
all damages caused by such wrongful act, which such

25

person by reasonable diligence could have prevented;
and such damages may be recovered in an action on the
case; and any number of persons guilty of such wrongful
neglect or refusal may be joined as defendants in the
action ... .

42 U.S.C. § 1986.

Plaintiff has failed to state a claim under § 1985.
Accordingly, he fails to state a § 1986 claim.  See Koorn v.
Lacey Twp., 78 Fed. Appx. 199, 208 (3d Cir. 2003) (citing Mian v.
Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d
Cir. 1993)); Grimes v. Smith, 776 F.2d 1359, 1363 n.4 (7th Cir.
1985).  Therefore, this claim will be dismissed without
prejudice.

G.   Forfeiture Claims

Plaintiff alleges that he was deprived of property without
due process in connection with the forfeiture of his automobile
and motorcycle.

These allegations are too vague to give the defendants fair
notice of the claim against them or the facts upon which the
claim rests.  Indeed, the defendants alleged to have participated
in this forfeiture are not specifically identified, nor are the
alleged defects in the proceeding identified.  This claim will be
dismissed without prejudice.

H.   Claim of Excessive Bail

Plaintiff's claim that has been subjected to an excessive
bail, in violation of his rights under the Eighth Amendment

26

Excessive Bail Clause and under the Sixth Amendment right to representation by counsel, must be brought by way of a petition for writ of habeas corpus, following exhaustion of his state remedies.  See, e.g., <u>Younger v. Harris</u>, 401 U.S. 37 (1971) and <u>O'Shea v. Littleton</u>, 414 U.S. 488, 496 (1974); <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973); <u>Clark v. Zimmerman</u>, 394 F. Supp. 1166 (M.D. Pa. 1975).

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Complaint must be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim and for asserting claims for damages against persons who are immune.[6]  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies with respect to certain claims dismissed without prejudice, the Court will grant Plaintiff leave

---

[6] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ...  The dispositive inquiry is whether the district court's order finally resolved the case." <u>Martin v. Brown</u>, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting <u>Borelli v. City of Reading</u>, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open certain claims in accordance with the court rules.

to move to re-open and file a second amended complaint.[7]  An

appropriate order follows.


/s/  Joel A. Pisano
United States District Judge

Dated: June 30, 2009

---

[7] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.